UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES SALSMAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ACCESS SYSTEMS AMERICAS, INC.,<br><br>　　　　　Defendant. | Case No.: C 10-01865 PSG<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 73)** |

　　　　Before the court is Defendant Access Systems Americas, Inc.'s ("Access") unopposed motion for summary judgment. Having considered the written briefs and oral argument, for the reasons below the motion for summary judgment is GRANTED.

## I.  BACKGROUND

　　　　It is undisputed that Access is a company that produces mobile telephone software and internet electronics. In March 2008, Access hired Plaintiff James Salsman ("Salsman") as an independent contractor providing software engineering services. On May 12, 2008, Access hired Salsman for a full-time position as a senior software engineer.

　　　　Access claims that Salsman received an employee handbook around the time of his hire that stated Salsman was hired as an at-will employee and that Access could terminate his employment at anytime without advance notice and without cause. Access has provided to the court the form that Salsman signed as an acknowledgment confirming that he had read and

understood the contents of this handbook.[1]

In late May 2008, Salsman claims that he began experiencing symptoms of what would later be diagnosed as a severe case of hyperthyroidism due to Graves disease. On June 20, 2008, Salsman collapsed and was admitted to the hospital emergency rooms. It is undisputed that Salsman notified Access of his diagnosis in late June and took medical leave from Access in late June and early July.

Salsman further claims that after he returned from medical leave, Access began to discriminate against him. Specifically, Salsman claims that his manager stopped inviting him to regular team meetings and started complaining about his performance out of proportion to the extent his illness was interfering with his assignments. Additionally, his manager began complaining that some of Salsman's behavior was inappropriate and unprofessional.

Salsman claims that, on August 19, 2008, his doctor wrote a letter requesting employment accommodations including extra time to complete work assignments. Salsman claims that Access refused to offer these accommodations. Access claims it made reasonable, good faith attempts to accommodate his medical condition, including, but not limited to, allowing Salsman to set his own work schedule and reducing his workload to a single deliverable.

It is undisputed that, on October 13, 2008, Access informed Salsman that his employment was being terminated and presented Salsman with a two-page release agreement ("Agreement").[2] This agreement offered Salsman severance benefits equivalent to four weeks of Plaintiff's base salary, one month of health insurance benefits under COBRA, and one month of outplacement assistance. In exchange for these benefits, Salsman would "completely release and forever discharge [Access] from any and all claims, of any and every kind, nature and character" which "include, but are not limited to, any claims under . . . the Americans with Disabilities Act."[3] The

---

[1] *See* 3/22/11 Anna Ferrari Decl. Ex. D (Docket No. 75).

[2] *See* 3/22/11 Ferrari Decl. Ex. F (Docket No. 75). Salsman has neither confirmed nor denied that this exhibit is the Agreement he signed. As the exhibit matches Salsman's representations about the Agreement in his Complaint and the exhibit appears to be signed by Salmsan, pursuant to Fed. R. Civ. P. 56(e), the court will consider the fact that this exhibit is the Agreement as an undisputed fact for the purposes of this motion.

[3] Ferrari Decl. Ex. F ¶ 2(A).

Agreement further states that Salsman has at least twenty-one days to consider the Agreement and that Salsman should consult an attorney before signing. Salsman signed the agreement on October 22, 2008.

On April 30, 2010, filed this lawsuit under the Americans with Disabilities Act ("ADA"). Salsman alleges that he was induced by coercion to sign the Agreement, and thus, it does not constitute a voluntary waiver of his ADA clams. Salsman claims that his finances had been depleted paying for his mortgage, other debts prior to his illness, and by his medical treatments prior to his termination. Thus, he had no choice but to sign the Agreement in order to continue paying for his medical care. Salsman's ADA claim remains the only cause of action in this case.

On March 22, 2011, Access filed this motion for summary judgment. Access argues that there is no genuine issue as to whether Salsman voluntarily waived his ADA claim against Access by executing the Agreement, and Salsman's ADA claim therefore is barred. Salsman filed no opposition. On May 3, 2011, the court heard oral argument on the motion for summary judgment. Salsman did not appear.

## II.  LEGAL STANDARDS

Summary judgment or adjudication is appropriate when there are no genuine and disputed issues of material fact and the moving party is entitled to prevail as a matter of law.[4] "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party."[5] "If conflicting inferences may be drawn from the facts, the case must go to the jury."[6] The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.[7]

## III. DISCUSSION

For purposes of the pending summary judgment motion, the question to be answered is

---

[4] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[5] *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

[6] *Id.*

[7] *Celotex*, 477 U.S. at 324.

whether a reasonable jury could find that the Agreement was not a valid waiver of Salsman's ADA claim. If the answer is no, then summary judgment must be granted.

"The conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law."[8] Thus, the court applies federal law to determine whether the Agreement constitutes a valid waiver by Salsman of his ADA claim against Access. In order for a waiver of the ADA claim to be valid, the record must show that the waiver was "voluntary, deliberate and informed."[9] The determination whether a waiver was "voluntary, deliberate, and informed," is "'predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed.'"[10] "Of primary importance in this calculation is the clarity and lack of ambiguity of the agreement, the plaintiff's education and business experience, the presence of a noncoercive atmosphere for the execution of the release, and whether the employee had the benefit of legal counsel."[11]

The language of the Agreement clearly and unambiguously states that, in exchange for the benefits, Salsman releases any ADA claims against Access. Salsman was working as a senior software engineer and indicated in his resume that he was college-educated,[12] thus the court concludes he was a sufficiently sophisticated party to the agreement. It is not clear whether Salsman retained legal counsel before signing the Agreement, but it is clear that the Agreement recommended that he do so.

As for the remaining factor — the presence of a noncoercive atmosphere for the execution of the release — Salsman asserted, in his Complaint and in various briefs filed with the court, that the presentation of the Agreement to him was accompanied by duress and undue influence because

---

[8] *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981).

[9] *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir. 1989).

[10] *Id.* (quoting *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir.1988)).

[11] *Id.* (citations omitted).

[12] *See* 3/22/11 Anna Ferrari Decl. Ex. A (Docket No. 75). Salsman has neither confirmed nor denied that this exhibit is the resume he submitted to Access. Pursuant to Fed. R. Civ. P. 56(e), the court will consider the fact that this exhibit is the resume Salsman submitted to Access as an undisputed fact for the purposes of this motion.

he was in need of the benefits offered in the Agreement to pay for his medical expenses. Salsman, however, has submitted no declaration or any other evidentiary material in support of this fact at anytime during this litigation. Salsman has argued that he was in financial need because he had depleted his savings on his medical bills and mortgage; Access had no role in creating this financial need. Other circumstances indicate that the environment was non-coercive. For example, Salsman was given time to consider the terms and to consult advisors. The Agreement provided Salsman with twenty-one days to consider the Agreement, but Salsman signed after only nine days.

Access has shown that, in light of the circumstances and conditions under which the release was executed, no reasonable jury could find that a coercive atmosphere existed such that Salsman's waiver was invalid. Access' motion for summary judgment therefore is GRANTED.

Dated: May 3, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

**Notice of this filing was automatically mailed to counsel via the court's Electronic Case Filing system.**

**A copy of this filing was mailed to:**

James Price Salsman
1324 Carlton Ave
Menlo Park, CA 94025

Dated: May 3, 2011

                                          */s/ Chambers Staff*
                              Chambers of U.S. Magistrate Judge Paul S. Grewal